I would ask to reserve three minutes of my time for rebuttal. Three minutes it is. Thank you. Go ahead, sir. Your Honors, this Court's recent en banc decision in the United States v. Nasir clearly settles the issue presented on this appeal. And that issue concerns the sentencing guidelines definition of what offenses qualify as predicates triggering a dramatic enhancement for so-called career offenders. My client was sentenced as a career offender based on a prior conviction for conspiring to commit robbery in violation of Pennsylvania law. And the District Court held that that qualified as a crime of violence within the meaning of the career offender guideline. That term, crime of violence, is defined to mean any of a number of kinds of offenses that appear in a detailed list. But nowhere in that list does the term conspiracy appear, be it conspiring to commit one of the listed offenses or conspiring to commit any other offense. And under Nasir, that omission means that the definition of crime of violence excludes conspiracy offenses, such as my client's prior conviction under Pennsylvania law. Now in Nasir, the Court looked at the companion definition in the career offender guideline for a predicate controlled substance offense. And like the definition of crime of violence, the definition of a controlled substance offense consists in a detailed list that enumerates a number of different kinds of offenses. Nowhere in that list is there any inchoate offense. And so Nasir held that the silence as to inchoate offenses had to be construed to exclude inchoate offenses from the definition. That same rule controls here. Because the definition of crime of violence does not even mention conspiracies, it must be construed to exclude conspiracies from the predicate definition. What about the listing in A of the one inchoate offense? Yes, so the A1 list attempted offenses that have as an element the attempted use of force. And on the interpretive principle of Nasir, that supports appellant's position. Just as Nasir looked to that provision and contrasted it with the provision before the Court there. And it said that the mention of attempt offenses in this definition strengthened the interpretation of the other, that the silence there had to be construed to exclude attempt offenses. And by the very same token, the mention of attempt offenses within this very definition must be construed to mean that the silence as to conspiracies, an entirely different offense, means that conspiracies are excluded. If you look at Nasir, it essentially made three points in its interpretation of the guideline. As your honors will recall, a great deal of the decision was about the separation of powers and what deference, if any, is due sentencing commission commentary. But when it came to actually interpreting the text, Nasir made three points. First, the definition did not even mention inchoate offenses, which Nasir said that alone indicates it does not include them. It then did look at the provision your honor mentioned in the crime and violence definition and said that the fact this other definition mentioned attempts strengthened the interpretation that the silence in the controlled substance offense excluded inchoate offenses. And finally, it said that the well-known canon of the expression of one thing is the exclusion of another supported the same conclusion, bolstered the conclusion. All three of those points hold exactly in interpreting the crime and violence definition. It does not even mention conspiracy, which alone indicates conspiracy is not included. The fact that it does mention attempts strengthens the interpretation that the omission of conspiracy was deliberate. Are you asking us to try to figure out which of two things you're asking us to do? Is it merely that the absence of conspiracy in A means that obviously your client doesn't fall with it here and that's it? Or is it that the mention of an inchoate offense means that any other inchoate offenses that are not attempts do not fall within A? I presume you're asking for the more narrow view that hey, you know, ours is conspiracy. Conspiracy is not mentioned. That's it. Yes, exactly, Your Honor. It's the simple principle sometimes expressed as the expressio unius canon that including one thing is excluding another. Including attempts is excluding conspiracy. Now, this issue was not raised below. So how are we to deal with it? Well, the case presents a good example of perfect satisfaction of each of the prongs of the plain error standard that we acknowledge applies. When it comes to the second prong concerning the clarity of the error, what we should recognize is that appellant doesn't require the slightest extension of Nassir. We seek simply a direct application of the very three points Nassir made to the companion provision in the same guideline. That is sufficiently clear to satisfy the second prong. There's no dispute as to the third prong. The government has suggested the court should possibly deny relief under the fourth prong. But that's a nonstarter. The Supreme Court has stated that in the ordinary case of guidelines error, remedial discretion should be exercised under the fourth prong. This court has faithfully applied that rule since it was announced in the Rosales-Morales decision. And the court, in fact, anticipated that rule. This court, even before the Supreme Court, had stated in United States v. Dahl that ordinarily this circuit will exercise remedial discretion. And that's as it should be. The fourth prong of plain error review is not an invitation for the government to stand up and say, deny him relief. He's a criminal, right? It's supposed to be about the balancing of fairness, integrity, and public reputation. And those concerns are ones that this court and the Supreme Court have resolved favor relief in this particular context of plain guidelines error. Let me ask you this question. This comes up a lot in the instances where police are seeking immunity, right? What is plain about the law? Is it equivocal? Is there a circuit split? Obviously, we have Nasir, but there seems to be a debate going on outside of the Third Circuit that would say that reasonable people can think about this in different ways. Does that affect our plain error analysis? I don't think the debate Your Honor mentions in other circuits has any bearing on the analysis, given that Nasir has definitively resolved it, correctly resolved it. I think there are, I have contemplated some, the alternative contexts with somewhat analogous issues. And I think without trying to get caught up in fine details of language, the point is that every precept on which Nasir relied to interpret one definition points in the exact same direction with regard to the definition at the neighboring provision of the text. So I could offer, try to offer some examples where you might need to extend Nasir. But here I think it really follows very directly from the role Nasir announced. Judge Cowen? I have no questions. Thank you, Your Honor. Thank you very much. Thank you. Good afternoon, Your Honor. May it please the Court. Robert Salzberg on behalf of the government. Your Honor, I do want to start with plain error review. I think that's what's very, very significant here. This is an objection that was not raised in the district court. This is an extremely important issue that affects, you know, an untold number of criminal cases. And it is subject to plain error review. The error here, if there was one, and of course I'll get to the point that we do not believe there was even an error, but the error is certainly not plain under current law. To answer Judge Greenaway's question, this Court has often said that even if it is plausible that this Court will one day reach a decision based on its precedent that an error, that there is an error, that does not amount to plain error. Plain error means it is settled as of the time of review. And this is not settled. There is no appellate authority anywhere that stands for the proposition that the defense has advanced here, which is that crimes of violence under the guidelines do not include conspiracies, attempts. Okay, I'll take the bait. Why is this, from your standpoint, a reasonable extension of Nassir? Well, it's not a reasonable extension because it's a very different provision. And so moving away from plain error, which I think is still very important, that it's not plain under current precedent. Nassir deals with a provision of the guidelines, Part B of the definition of what is a predicate of controlled substance offense. It's very specific. It says it's an offense that prohibits the manufacturing, distribution, et cetera, of a controlled substance. The crime of violence definition is more wide-ranging. It doesn't speak about specific conduct that is prohibited. It speaks of a crime that has as an element the use, attempted use, or threatened use of physical force. That by itself might be somewhat ambiguous. We then look at the next part of the definition, which enumerates specific offenses. And so there are a couple interesting things. One is we already have an in-court attempt literally listed in the guideline definition. So we do not have the situation that Nassir addressed, where the provision for controlled substance offense is entirely silent with regard to in-court offenses. But you can argue that expressiones should likewise apply, right? The fact that attempt is mentioned should work to the benefit of those who don't fall within the ambit of attempt. Well, we're on a little bit of different ground here, Your Honor, because what we're dealing with here, the question that Nassir addresses, is agency interpretation of its own regulation. And this is where Kieser, I don't even know how to pronounce it, it's Kieser or Kaiser, but this is where Kieser versus Wilkie comes into play, and that's what Nassir applied. And Kieser does not foreclose an agency's ability to interpret its regulation. What it says is, is it can't interpret an unambiguous regulation. And Kieser goes further than that and says, we're supposed to apply all the normal rules of statutory interpretation in deciding whether there's ambiguity. And if at the end of that there is ambiguity, then we must defer to the agency's interpretation. So we're not exactly dealing with a normal interpretive question here where you just say, okay, express your units and that resolves things. What we're looking at is we apply all the tools of statutory construction and we ask, is there ambiguity in this provision? And when you do that with regard to the crime of violence definition, yes, at the end of the day, there is ambiguity. And what that means is the sentencing commission has the authority to interpret its regulation. It's interesting. This is a little different also from the normal rule of lenity provision. Now, I know Judge Peebles wrote a scholarly concurrence, which Judge Greenaway, you joined in the Nassir opinion, advocating the use of the rule of lenity when you have an ambiguous guideline. And that's fine, but that's also not exactly, I don't know if it's fine, the government has disagreed with that, but putting that aside. Yeah, not sure we're going to get there, but if we did. Right, we're not going to get there because we have a different issue here. The normal way the rule of lenity works is that when you look at a provision, if at the end of the day after applying all the tools it's ambiguous, then you favor the defendant. We're on different ground here. Keiser says you apply all the tools and at the end of the day if it's ambiguous, you defer to the sentencing commission. So that's our task here. And that was the task in Nassir. And whether we respectfully disagree with it or not is the ruling of this court. Well, let me ask you this question. If we, and everything we do is with respect, if we disagree with you on the ambiguity point, let's assume that for a moment, wouldn't that lead to the conclusion that your friend proposes? If this court were to decide that the crime of violence definition is unambiguous and excluding conspiracies and that we cannot consider the sentencing commission's interpretation, then yes, my good friend, Mr. Donohue prevails. I still don't think he prevails on plain air review given that there's no authority saying that anywhere and it's not a direct application of Nassir given the difference in the language of the provisions, given the fact that no other circuit has adopted it. But if I can go back to the point that this is an ambiguous provision, it's not just that this does include an inchoate offense. It's not just that it refers to elements. You know, it's interesting that in the Preston decision in 1990, right after the sentencing guidelines were adopted, in Preston this court looked at the same provision and said that conspiracies are included because the elements of conspiracy always involve the elements of the underlying crime, the agreement to commit the underlying crime. Now that later falls away when we get to a new interpretation by the Supreme Court of a different thing of what involves physical force. But that's very informative as to, again, the ambiguous question that arises here. Another interesting point, which is the enumerated offenses that I mentioned before. Unlike the controlled substance offense that was addressed in Nassir, the crime of violence provision includes enumerated offenses. And one of the interesting things we see there is that it includes offenses that do not involve physical force against the person of another. It involves the possession of a firearm, possession of explosives, arson. These are not crimes that require as an element the use of physical force. The problem that we have with conspiracy in the ACCA context, which your audience are very, I'm sure, painfully familiar with, but in the ACCA context, the problem is there are no enumerated offenses that apply other than a handful that are not applicable here. And there we've conceded that a conspiracy offense does not necessarily use physical force because it can simply be an agreement without anything ever happening. But then we look at this guideline and we say, oh, well, we see the commission in its guideline has gone beyond that physical force requirement. Also raising the question, well, what about conspiracy then? That's what creates an ambiguity that directly invites the involvement of the sentencing commission. That's what the agency is for. And this is not just some casual interpretation. One of the things that Kaiser and those who have long attacked Seminole Rock and Auer and these other decisions, one of the problems there is that many agencies issue interpretations in lots of casual ways. They send out letters, they have opinions, they give a speech. That's not what we're talking about here. The sentencing commission was directed by Congress to draft guidelines and commentary. The sentencing commission then wrote a guideline, it's 1B1.7, that said our commentary matters. You have to follow the commentary as well as the guideline. Congress approved 1B1.7. The sentencing commission then historically has always submitted the commentary to Congress with very, very few exceptions in emergency situations. But they've always referred the commentary to Congress for approval, including, as we list in our brief, 10 times that it has submitted this crime of violence language and this application note to Congress for approval without dissent. So again, we have to look at all the tools of statutory interpretation. One of them is the history and purpose of the provision. And we have the sentencing commission with the approval from Congress from day one saying that a crime of violence that includes these elements, that includes these enumerated offenses, also includes conspiracies, attempts, and aiding and abetting, which historically under the law is a perfectly rational conclusion because of course conspiracies and attempts and aiding and abetting are historically punished in the same way as the substantive offense. So when we look at the whole picture here, I don't think we can fairly say that this is as unambiguous as what this court addressed in Nasir. Where in Nasir, this court's addressing a provision that simply says an offense that prohibits the manufacture of drugs, period, as opposed to this more open-ended provision of the crime of violence provision and this wealth of history going back to 1987, literally to the first manual in which the commission has consistently instructed. There's one more canon that I can throw out because we're supposed to consider all of them and that's the canon against absurdity. You know, we're familiar with the canon that provisions shouldn't be interpreted in a way that produces absurdity. And we are bordering on absurdity here where we have... that we should avoid by interpreting it in the way that your friend proposes. Well, let's look at this case. If you look at the pre-sentence report, this defendant, the crime of violence that he was held responsible for that made him a career offender was where he and a couple of his wayward friends burst into someone's home. He held a gun. Now, he disputes whether he was the gunman or not, but he doesn't dispute that he was there. And what the pre-sentence report recounts is that he held a gun to the head of the innocent homeowner while his buddies ransacked the place and stole it and left the terrorized victim behind. That's a crime of violence. The state pled it to conspiracy. So what is absurd? Yes, that's absurd. If we have Congress directing the Sentencing Commission to assure a sentence near the statutory maximum for someone with a history like his who has been involved in drug and violent offenses, and he is spared because of this really odd debate about administrative law, directives against the Sentencing Commission that for over 30 years has presented its guidelines and commentary not just here but throughout the manual by presenting one body of law the courts have followed for over 30 years. That's a great example of absurdity, and I've seen it in many, many other instances and I'm sure your honors have. We're in a strange period the last few years of litigation in this court where we have things like the categorical approach that make no sense. It's completely counterfactual and arguments like this. Where else have we looked to the facts of the case in these guideline issues? Well, we can look to the facts. I'm not suggesting that I'm answering Judge Greenaway's question, of course, but I'm not suggesting that the facts govern the interpretation here as to whether it's ambiguous except that it may lead to absurd results. I think that is a perfectly fine thing to do. We also look to the facts if we were not to prevail here, for example. We look to the facts in justifying a variance from the guidelines. That would be the next argument, obviously, that if the guideline did not produce a career offender sentence,  in deciding on the final sentence. So the bottom line here is that this is not a straightforward issue. It's a very odd issue. There is no error here that is plain. And even if there is, there's not error. We have to use all of these tools and examine all of these different provisions in deciding whether it's ambiguous. If there's ambiguity, the expert agency's authority applies. And again, we have an agency here that has consistently and unambiguously interpreted its guideline the same way in an application note that is plain as day that says that inchoate offenses are included. Should we speculate why Congress hasn't made the change itself? I think... Or the Sentencing Commission hasn't made the change. Right. I fully anticipate... We haven't had a Sentencing Commission, unfortunately, for three and a half years. I am told that the administration is going to be nominating people. I hope that the Senate will act on that. And so hopefully sometime this year we'll have a Sentencing Commission. And there's no doubt that this will be one of the first issues. There's a profound issue here that's presented by Nassir and the other couple circuits that have agreed. And it affects the whole manual. Again, this is the method... You can just glance at the book and see. This is the method the Sentencing Commission has always used based on 1B1.7 to set out guidelines and then give further explanation that it expects to be followed. So there's a profound issue here as to what to do as a result of Nassir. And I'm sure it will be one of the primary issues in front of the new commission. Judge Cowen? Thank you. Counsel, don't you agree there's a difference between conspiracy and attempt? And if you agree that there is a difference, aren't you and the Sentencing Commission asking us to treat them the same? Certainly there is a difference, Your Honor, between conspiracy and attempt. We're not saying that conspiracy is included because the word attempt is there. We're saying that the word attempt is part of what leads us down the road to concluding that the provision is otherwise ambiguous as to whether it also includes conspiracy. But no, I'm not here to say that because it includes attempt, it includes conspiracy. Thank you. Thank you, sir. Thank you very much. Good to see you. Thank you. Well, I think, Your Honors, I've put your fingers on the nub of the issue. As far as conspiracy vis-a-vis attempt, I will recall that in another case recently decided by this court, the government conceded that the very language on which it's focusing here does not reach a conspiracy to commit robbery. That's United States v. Walker at footnote 10. And that position is a very sound concession. Just for a recent circuit decision confirming that point, I'd offer Capers 20F4105. I believe it says circuits are unanimous in holding conspiracy not to meet that definition. I don't understand how it can create ambiguity when everyone has agreed it doesn't reach conspiracy, including the government itself. Now, I do agree with my colleague that under Kaiser v. Wilkie, the court has to use all the tools in its legal toolkit to construe a provision. But the only – I heard two tools on the part of Mr. Zausman. One, a great emphasis upon the history of the commission submitting its commentary to Congress. And that argument was squarely before this court in this year. And clearly, Umbach Court did not find it persuasive. I think it's water under the bridge at this point. The other canon that the court's attention was directed to is the canon against absurdity. And I think Your Honors appreciate that that seems to essentially be one more lament about the categorical approach. We know that the Supreme Court has held the categorical approach is not absurd, most recently in United States v. Davis. If Your Honors have no further questions, I will leave the podium. I think we're good. Thank you, Your Honors. Thank you both very much. Good to see you both. And we will take the matter under advisement.